# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 18-cv-60890-BLOOM/Valle
## (Bankr. Case No. 15-20095-BKC-JKO)

MUSIC ROYALTY CONSULTING, INC.,

      Appellant,

v.

SCOTT STORCH MUSIC, LLC,

      Appellee.

_____/

## ORDER DISMISSING BANKRUPTCY APPEAL

**THIS CAUSE** is before the Court upon Appellant Music Royalty Consulting, Inc.'s ("Appellant" or "MRCI") Notice of Appeal of (1) Order Granting Debtor[']s Motion to Deem Pre-Petition Contracts [R]ejected And Determine Ownership of "All Eyez" (the "Rejection Order") and (2) Order Denying MRCI's Motion for Partial Reconsideration of Order Granting Debtor[']s Motion to Deem Pre-Petition Contracts Rejected and Determine Ownership of "All Eyez" (the "Reconsideration Order") (together, the "Orders"), ECF No. [1] ("Notice"). The Court has carefully reviewed the parties' briefs, the record on appeal and the applicable law, and is otherwise fully advised. For the reasons set forth below, this case is dismissed for lack of jurisdiction.

## I.  BACKGROUND

This appeal arises in the context of a Chapter 7 bankruptcy proceeding. The parties do not dispute the essential underlying facts. Scott Storch ("Storch") is a songwriter and music producer. In pertinent part, Storch provided songwriting services through his company, Tuff Jew Productions, LLC ("Tuff Jew"). In 2000, Tuff Jew entered into an Exclusive Songwriter and Co-

Publishing Agreement (the "Publishing Agreement") with an entity called TVT Music, Inc. ("TVT"). Pursuant to the Publishing Agreement, Tuff Jew was required to write songs, and grant copyrights and a portion of its publisher's share of future royalties to TVT. TVT collected both the publisher's and writer's share of Tuff Jew's royalties, collected its portion of the publisher's share, and then remitted the balance of the publisher's share and the writer's share to Tuff Jew. Appellee Reservoir Media Management, Inc. ("Reservoir") later became the successor in interest to TVT.

In 2011, Tuff Jew and a number of other Storch-related entities entered an Asset Purchase Agreement, through which Reservoir became the 100% owner of copyrights and entitled to 100% of the publisher's share in a defined set of musical compositions. Reservoir collected the resulting royalty payments and administered the proceeds in pertinent part by remitting the writer's share to Tuff Jew. In 2012, MRCI purchased the writer's share from Tuff Jew, in a document signed by all the Storch-related entities (Storch, individually, Tuff Jew, Scott Storch Music, LLC a/k/a Scott Storch Music, Scott Storch Music, Scotty Kat Music, and Great Scott Publishing, LLC) (collectively, the "Storch Entities"). Thereafter, pursuant to a letter of direction, Reservoir was to remit the writer's share of royalties to MRCI, which Reservoir did from June 19, 2012 until September, 2017.

In 2015, Storch filed for bankruptcy under Chapter 7. *See* Case No. 15-20095-BKC-JKO (the "Main Bankruptcy" case).[1] In August, 2016, the appointed bankruptcy trustee, Scott N. Brown ("Trustee"), filed an adversary proceeding in which he sought consolidation of all the Storch Entities with the bankruptcy estate of Storch. *See* Case No. 16-01421-JKO, (the "Sub

---

[1] References to docket entries in the Main Bankruptcy case are cited as "BK ECF No. [x]."

Con" case).[2]  As the Sub Con case proceeded, the Trustee sought and obtained the Bankruptcy Court's approval for a settlement agreement in the Main Bankruptcy case, pursuant to which Storch agreed to support and consent to the consolidation sought by the Trustee in the related adversary proceeding, and the Trustee agreed to reject all pre-petition executory contracts if he was successful in obtaining consolidation.  *See* BK ECF Nos. [120], [123].  Thereafter, the Trustee obtained a consent judgment consolidating all the Storch Entities with the Storch bankruptcy estate on September 30, 2016.  *See* SC ECF No. [6], BK ECF No. [126] (the "Sub Con Judgment").

On November 10, 2016, the Trustee filed a Motion for Entry of Order Deeming Co-Publishing Agreement between Reservoir Media Management, Inc. and (A) Tuff Jew Productions LLC and (B) Debtor, and All Amendments Thereto, Rejected *Nunc Pro Tunc* to Petition Date, BK ECF No. [132], which was later withdrawn on January 9, 2017, BK ECF No. [137].  On June 1, 2017, the Trustee commenced an adversary proceeding, Case No. 17-01220-JKO, against MRCI for fraudulent transfer with respect to the sale of Storch's writer's share to MRCI.  *See* BK ECF No. [140].  The Trustee and MRCI ultimately reached a settlement of the adversary claims.  *See* BK ECF No. [222].

On November 3, 2017, Storch filed his own motion in the Main Bankruptcy to deem pre-petition contracts rejected, BK ECF No. [146] ("Rejection Motion").  MRCI filed a response on November 24, 2017, BK ECF No. [163], arguing that the relief sought by Storch in the Rejection Motion could only be obtained, if at all, through another adversary proceeding, and not by motion, because several issues remained to be determined—including whether the Publishing Agreement was executory, whether the Sub Con Judgment was binding upon MRCI, and the

---

[2] References to docket entries in the Sub Con case are cited as "SC ECF No. [x]."

effect of a rejection on MRCI, which had purchased Tuff Jew's pre-petition writer's share. On December 5, 2017, the Bankruptcy Court granted the Rejection Motion after a hearing held on November 28, 2017. BK ECF Nos. [168] (the Rejection Order), [171].

MRCI then moved for partial reconsideration, arguing that the entry of the Rejection Order worked a manifest injustice to MRCI by granting relief without an adversary proceeding, because MRCI purchased Tuff Jew's rights, and Reservoir expressly stated that it would use the Rejection Order as justification for not paying MRCI the writer's share royalties. BK ECF No. [173]. After full briefing and a hearing held on February 28, 2018, the Court denied the Reconsideration Motion. *See* BK ECF Nos. [184] (the Reconsideration Order), [187].

On appeal, MRCI argues that the Bankruptcy Court erred by entering the Rejection Order (1) without first analyzing whether the Publishing Agreement is executory, or contains severable non-executory obligations; (2) determining that an adversary proceeding was not required; and (3) effectively binding MRCI to the Sub Con Judgment when MRCI was not provided adequate notice of the Sub Con case. MRCI also contends that it was error for the Bankruptcy Court to deny reconsideration.

## II.     STANDARD OF REVIEW

A bankruptcy court's legal conclusions and application of the law to the facts of a given case are reviewed *de novo*, and its factual findings for clear error. *Carrier Corp. v. Buckley (In re Globe Mfg. Corp.)*, 567 F.3d 1291, 1296 (11th Cir. 2009); *Club Assocs. v. Consol. CapitalRealty Inv'rs (In re Club Assocs.)*, 951 F.2d 1223, 1228 (11th Cir. 1992). "Under *de novo* review, a Court independently examines the law and draws its own conclusions after applying the law to the facts of the case, without regard to decisions made by the Bankruptcy Court." *In re Mut. Ben. Offshore Fund, Ltd.*, 508 B.R. 762, 769 (S.D. Fla. 2014) (citing *Kaiser*

*Aerospace & Elecs. Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.*), 244 F.3d 1289, 1295 (11th Cir. 2001)). Reviewing for clear error, "findings of fact are not clearly erroneous unless, in light of all of the evidence, [the reviewing court is] left with the definite and firm conviction that a mistake has been made." *Westgate Vacation Villas, Ltd. v. Tabas (Int'l Pharmacy & Discount II, Inc.)*, 443 F.3d 767, 770 (11th Cir. 2005). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." <u>*Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985)</u>.

Additionally, the determination of certain matters is committed to the discretion of the bankruptcy court, and is reviewed for abuse of discretion. *See, e.g., Phillips v. Phillips (In re Phillips)*, 2013 WL 1899611, at *1 (M.D. Fla. May 7, 2013) ("Where a matter is committed to the discretion of the bankruptcy court, the district court must affirm unless it finds that the bankruptcy court abused its discretion.") (citing *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1238 (11th Cir. 2006)); *Charter Crude Oil Co. v. Petroleos Mexicanos (In re Charter Co.)*, 125 B.R. 650, 654 (M.D. Fla. 1991) (same, regarding admission of evidence) (citing *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1374 (5th Cir. 1981)). "A bankruptcy court abuses its discretion when its ruling is founded on an error of law or on misapplication of the law to the facts." *Park Nat. Bank v. Univ. Ctr. Hotel, Inc.*, 2007 WL 604936, at *1 (N.D. Fla. Feb. 22, 2007); *see also Amlong & Amlong*, 500 F.3d at 1238 ("A decision that is contrary to the law plainly is an abuse of discretion."); *West v. Smith (In re Cecil)*, 2012 WL 3231321, at *2 (M.D. Fla. Aug. 3, 2012) ("A court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts. In its application, the abuse of discretion standard is nearly indistinguishable from the clearly erroneous standard.").

### III. ANALYSIS

#### a. The Orders Appealed Are Not "Final" Orders

Pursuant to 28 U.S.C. § 158(a), the district courts have jurisdiction to hear appeals from final judgments and orders, and interlocutory orders of the bankruptcy judges, with prior leave of court. 28 U.S.C. § 158(a)(1),(3). MRCI did not seek leave to appeal; rather it asserts that the Court has jurisdiction pursuant to § 158(a)(1).[3] Although the parties do not appear to dispute that this Court has jurisdiction, the Court is obligated to consider jurisdiction "even if it means raising the issue *sua sponte*." *In re Donovan*, 532 F.3d 1134, 1136 (11th Cir. 2008) (citing *AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1359 (11th Cir. 2007)); *see also Figueroa v. Wells Fargo Bank, N.A.*, 382 B.R. 814, 819 (S.D. Fla. 2007) ("A Federal court must always determine whether it has jurisdiction to hear a case.").

In bankruptcy cases, "[t]he statutory requirement of finality is a flexible concept, grounded in the practicalities of the situation." *In re Allied Holdings, Inc.*, 376 B.R. 351, 355 (N.D. Ga. 2007) (quoting *Jove Eng'g Inc. v. Internal Revenue Serv.*, 92 F.3d 1539, 1548 (11th Cir. 1996). A bankruptcy case is "an aggregation of controversies, many of which would constitute individual lawsuits had a bankruptcy petition never been filed." *Id.* at 355. As a result, "[f]inality of bankruptcy orders cannot be limited to the last order concluding the bankruptcy case as a whole." *Id.* However, the increased flexibility "does not render appealable an order which does not finally dispose of a claim or adversary proceeding." *In re Donovan*, 532 F.3d at 1136. Indeed, to be final, "a bankruptcy court order must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief." *Id.* at 1136-37 (quoting *In re Atlas*, 210 F.3d 1305, 1308 (11th Cir. 2000)) (internal quotations omitted). "It is

---

[3] As neither Storch nor Reservoir Media, the Appellees, address the issue of jurisdiction in their response briefs, the Court assumes their agreement with MRCI's jurisdictional statement.

generally the particular adversary proceeding or controversy that must have been finally resolved rather than the entire bankruptcy litigation." *Commodore Holdings Inc. v. Exxon Mobil Corp.*, 331 F.3d 1257, 1259 (11th Cir. 2003). "In short, the same concepts of finality apply in bankruptcy as in any other case, but they are applied to the discrete controversies within the administration of the estate; 'the separate dispute being assessed must have been finally resolved and leave nothing more for the bankruptcy court to do.'" *In re Donovan*, 532 F.3d at 1137 (quoting *In re Charter Co.*, 778 F.2d 617, 621 (11th Cir. 1985)).

Upon review, contrary to MRCI's conclusory statement of jurisdiction, the Orders are not final orders of the Bankruptcy Court. Indeed, the Orders do not completely resolve the issues pertaining to any claim involved in the underlying bankruptcy proceeding; rather, they merely confirm an action that otherwise occurs by operation of law. As the record and the briefing make evident, MRCI's protestations regarding the Orders are ancillary to the Main Bankruptcy proceeding. MRCI is not a party to the Publishing Agreement and MRCI is not a creditor of Storch. Furthermore, the Bankruptcy Court made it amply clear that the Rejection Order did not determine what the effect of the rejection of the Publishing Agreement is on any rights that MRCI may have. *See* BK ECF No. [187] at 37.

### b. Leave to Appeal is Not Warranted

Nevertheless, a party may appeal a non-final order of a bankruptcy court with leave of the district court. *See* 28 U.S.C. § 158(a)(3) ("jurisdiction to hear appeals . . . with leave of the court, from other interlocutory order and decrees"); *Tobkin v. Calderin*, 2012 WL 3609867, at *1 (S.D. Fla. Aug. 22, 2012) ("district courts have jurisdiction to hear appeals with leave of the court, from other interlocutory orders and decrees"); *In re Fillard Apartments, Ltd.*, 104 B.R. 480, 480-81 (S.D. Fla. 1989) ("Interlocutory appeals, however, may only be taken to the district

court with the leave of the district court."). Under the applicable Rules, the Court may treat the Notice as a motion for leave to appeal, and consider whether interlocutory review is warranted under § 158(a)(3). *See* Fed. R. Bankr. P. 8004(d).

Interlocutory review is generally disfavored for its piecemeal effect on cases. *See Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1276 (11th Cir. 2000) ("[I]nterlocutory appeals are inherently disruptive, time-consuming, and expensive and, consequently, are generally disfavored.") (quotations omitted). However, a district court may grant interlocutory review of a bankruptcy order if the moving party demonstrates "that: (1) the order presents a controlling question of law; (2) over which there is a substantial ground for difference of opinion among courts; and (3) the immediate resolution of the issue would materially advance the ultimate termination of the litigation." *Laurent v. Herkert*, 196 F. App'x 771, 772 (11th Cir. 2006) (citing 28 U.S.C. § 1292(b)); *see In re Pac. Forest Prods. Corp.*, 335 B.R. 910, 919 (S.D. Fla. 2005) (hereinafter, "*Colonial Bank*"). This "three-part standard is analogous to that set forth in 28 U.S.C. § 1292(b), which governs appeals from the district court to the circuit court of appeals." *Colonial Bank*, 335 B.R. at 919; *see In re Celotex Corp.*, 187 B.R. 746, 749 (M.D. Fla. 1995) (citing *In re Charter Co.*, 778 F.2d 617, 620 (11th Cir. 1985)) ("In determining when to exercise this discretionary authority, a district court will look to the standards which govern interlocutory appeals from the district court to the court of appeals pursuant to 28 U.S.C. § 1292(b)."). "Leave must be denied if the party seeking leave to appeal fails to establish any one of the three elements." *Figueroa*, 382 B.R. at 824.

As the party seeking interlocutory review, MRCI "bears the burden of persuading the court that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Samsung Semiconductor, Inc. v. AASI*

*Liquidating Trust ex. Rel. Welt*, 2013 WL 704775, at \*4 (S.D. Fla. Feb. 26, 2013) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (discussing the role of the court of appeals in interlocutory appeals)); *see also Soler v. Yip*, 2013 WL 5446674, at \*5 (S.D. Fla. Sept. 30, 2013) ("interlocutory bankruptcy appeals should be the exception, not the rule."). Even when a party has established the three factors warranting interlocutory appeal, a court "has discretion to turn down" an interlocutory appeal, as liberal use of the interlocutory appeal process "is bad policy." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004).

Here, MRCI fails to make a showing as to the second and third factors. The only properly identified issue of law is whether the Bankruptcy Court could deem the Publishing Agreement rejected by entry of the Rejection Order, or whether an adversary proceeding was required.[4] As the Court has already noted, the Bankruptcy Court did not decide the effect of the Publishing Agreement being rejected on any rights that MRCI may have to the writer's share royalties.

Second, MRCI fails to point to authority that would indicate a substantial difference of opinion. MRCI points to case law indicating that substantive consolidation should be used sparingly and that the legal character of a contract is a threshold determination, *In re Learning Publications, Inc.*, 94 B.R. 763, 764 (Bankr. M.D. Fla. 1988). However, MRCI fails to provide support for its main proposition that it was improper for the Bankruptcy Court to enter an order essentially confirming an event that occurs automatically by operation of law, and with respect to

---

[4] The argument that MRCI could not be bound by the Sub Con Judgment due to insufficient notice was not made to the Bankruptcy Court in the first instance. *See Access Now, Inc. v. Sw. Airlines, Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.") (internal quotations and citation omitted).

a contract to which MRCI is not a party. *See* 11 U.S.C. § 365(d) ("In a case under Chapter 7 of this title, if the trustee does not assume or reject an executory contract . . . of the debtor within 60 days after the order for relief, . . . , then such contract or lease is deemed rejected." Indeed, MRCI is not a party to the Publishing Agreement, to which the Rejection Order related. MRCI's true objection to the Orders in the instant appeal is the potential effect that the Rejection Order will have on its rights to the assignment of the writer's share royalties, which is not a part of the Publishing Agreement and, as previously stated, is not an issue that has been decided by the Bankruptcy Court.

Third, MRCI fails to demonstrate how the immediate resolution of the issues presented in this appeal would materially advance the termination of litigation. The Court understands that a ruling as to the effect of the Rejection Order upon MRCI's rights to the writer's share of royalties, sooner rather than later, would be preferable from MRCI's perspective. However, that is not a sufficient basis to justify interlocutory review. Accordingly, the Court declines to entertain an interlocutory appeal in this instance.

### c. The Bankruptcy Orders Should Be Affirmed

Even assuming the Court was to exercise jurisdiction to consider the merits of this appeal, MRCI's arguments fail for several reasons. First, as the Court already noted, the argument that MRCI cannot be bound by the Sub Con Judgment was not made to the Bankruptcy Court in the first instance. Tellingly, MRCI's counsel conceded at the hearing on the Rejection Motion that, although not a party, MRCI was aware of the Sub Con proceedings. *See* BK ECF No. [187] at 34 ("I want to be clear, I want to be very clear, I'm not saying that we were unaware that the substantive consolidation was happening. I want to be very clear about that.").

Therefore, MRCI's argument on appeal regarding the sufficiency of notice of the Sub Con proceedings is belied by the record.

Second, the Court does not agree with MRCI's contention that an adversary proceeding was required. The parties appear to agree in their characterization of the Rejection Order as a "comfort order," though MRCI argues that the relief requested in the Rejection Motion could not be granted through a comfort order, but that Bankruptcy Rule 7001 required an adversary proceeding. Pursuant to Rule 7001, "a proceeding to determine the validity, priority, or extent of a lien or other interest in property," or "a proceeding to obtain a declaratory judgment relating to any of the foregoing" are adversary proceedings. Fed. R. Bankr. P. 7001(2), (9). MRCI argues that the relief sought through the Rejection Order was the determination of rights in property or a declaratory judgment. While the Bankruptcy Court noted its "sense that [Storch is] seeking a determination here of the extent, validity and priority of liens," *see* ECF No. [171] at 4, the Bankuptcy Court ultimately disagreed with such a characterization during the hearing on the Reconsideration Motion. *See* ECF No. [187] at 8 ("I frequently play Socratic dialogue with counsel, Mr. Throckmorton . . . [so i]t's not shocking to me that I may have given rise to hopes on one side of the room and dashed them on the other.).

In contrast, in bankruptcy, "[c]omfort orders serve a valuable purpose. The orders are entered primarily for a third party's benefit . . . [t]he orders merely identify and reiterate what has already occurred by operation of law." *In re Hill*, 364 B.R. 826, 828 (M.D. Fla. 2007). According to Appellees, and as determined by the Bankruptcy Court, the Rejection Order reiterated what occurred by operation of law under § 365, when the Trustee did not expressly assume the Publishing Agreement.

However, "[c]omfort orders are not appropriate when a court must consider information outside of a case's docket or outside of the court's immediate purview." *Id.* at 831. MRCI argues that because the factual issues it identifies (i.e. whether the contract was executory and whether MRCI was bound by the Sub Con Judgment) remained and could not be determined from the record, a comfort order was inappropriate. MRCI argues further that the Bankruptcy Court failed to review the Publishing Agreement because it was not attached to the Rejection Motion, and it was not referenced in the Rejection Order or hearing transcript.

Once again, MRCI's arguments are not supported by the record or case law cited. Indeed, although the Publishing Agreement was not attached to the Rejection Motion, it was attached to the Trustee's motion filed in November, 2016. *See* BK ECF No. [132] at 8-88. Thus, the Publishing Agreement was readily available for the Bankruptcy Court's review, even if it was not re-filed until it was attached to Reservoir's objection to the Reconsideration Motion. Furthermore, while MRCI contends that the Bankruptcy Court entered the Rejection Order without reviewing the Publishing Agreement because it was not referenced in the Rejection Order or the hearing transcript, MRCI points to no authority that requires the Bankruptcy Court to enter orders containing such references. Section 365 by its terms applies only to executory contracts. In deeming the Publishing Agreement rejected, the Bankruptcy Court necessarily made the determination that the Publishing Agreement was executory. Moreover, while MRCI identified the determination of whether the Publishing Agreement is executory as one of the factual issues in support of its argument regarding the necessity of an adversary proceeding, it did not indicate to the Bankruptcy Court in the Reconsideration Motion that it believed the Bankruptcy Court had failed to review the Publishing Agreement, as it argues here.

How Reservoir intends to use the Rejection Order with respect to payments of the writer's share to MRCI under an assignment made subsequent to and not embodied in the Publishing Agreement is not an issue that was resolved by entry of the Rejection Order. Nor may it be resolved by this Court in the context of the instant appeal. As the Bankruptcy Court noted, there has been no ruling with respect to the effect of the Rejection Order upon Reservoir's obligation to pay MRCI the writer's share. *See* BK ECF No. [187] at 137. "Section 365 was included in the Bankruptcy Code to give the debtor the option of assuming contracts where performance by the non-bankrupt party will benefit the estate, or, of rejecting contracts where further performance by the debtor will not benefit the estate." *In re Gencor Indus., Inc.*, 298 B.R. 902, 909 (M.D. Fla. 2003). However, "[r]ejection does not embody the contract-vaporizing properties so commonly ascribed to it . . . . Rejection merely frees the estate from the obligation to perform; it does not make the contract disappear." *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1306 (11th Cir. 2007) (quoting *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 687, 703 (Bankr. S.D.N.Y. 1992) (internal quotations omitted). "More specifically, rejection has absolutely no effect upon the contract's continued existence; the contract is not cancelled, repudiated, rescinded, or in any other fashion terminated." *Id.* Indeed, MRCI does not take issue with a purported non-performance by Storch or the consolidated debtor Storch Entities. Rather, it takes issue with the potential position that Reservoir, a non-debtor, may take with respect to payment obligations to MRCI, another non-debtor. Therefore, MRCI's appeal is not well-taken.

## IV.    CONCLUSION

For the foregoing reasons, this case is **DISMISSED** for lack of jurisdiction. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida this 26th day of December, 2018.

BETH BLOOM
UNITED STATES DISTRICT JUDGE

Copies to:

Counsel of Record